**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

RUSSELL DOMITROVICH and THOMAS
GUSSIE, individually and on behalf of all
others similarly situated,

      Plaintiffs,

  v.

M.C. DEAN, INC.,

      Defendant.

Civil Action No. 1:23-cv-00210-CMH-JFA

<u>**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT AND TO DIRECT NOTICE OF
PROPOSED SETTLEMENT TO THE CLASS**</u>

# I.    INTRODUCTION

Following hard-fought settlement negotiations, the Parties[1] have reached a settlement to resolve consumer claims arising from the Incident announced by M.C. Dean, Inc. in September 2022. The settlement creates a non-reversionary common fund of $750,000 for the benefit of the Settlement Class Members, including reimbursement for Ordinary and/or Extraordinary Out-of-Pocket Losses and Attested Time fairly traceable to the Incident and alternative cash payments. Finally, the Settlement Fund will be used to pay additional necessary benefits, including for a state-of-the-art notice and administration program, and as approved by the Court, service awards to the Settlement Class Representatives and attorneys' fees and expenses. Further, as part of the settlement, M.C. Dean is committing, to the extent there is no legal, contractual or regulatory need for the information, to make good faith efforts to encrypt, delete or redact from its Internet-accessible systems any Social Security number or driver's license number of terminated employees who have not been employed by Defendant since January 1, 2013.

The settlement is a favorable result for the Settlement Class, securing valuable benefits tailored to the facts of the case. The settlement is fair, reasonable, and adequate and meets the requirements of Rule 23(e). Plaintiffs thus move for an order preliminarily approving the settlement and directing class notice and scheduling a Final Approval Hearing. In support of their motion, Plaintiffs submit the Settlement Agreement ("Settlement Agreement") (Ex. 1 hereto); a proposed order preliminarily approving the settlement and directing notice that has been approved by M.C. Dean (Ex. 3 to the Settlement Agreement); the declaration of Interim Co-Lead Counsel

---

[1] The parties to the settlement are the employee Settlement Class Representatives, on behalf of the proposed Settlement Class, and Defendant M.C. Dean, Inc. ("Defendant"). Capitalized terms used in this memorandum have the same meaning as in the Settlement Agreement ("S.A."), attached hereto as Exhibit 1.

Ryan D. Maxey ("Maxey Decl.") (Ex. 2 hereto); and the declaration of Cameron R. Azari, Esq. on behalf of the proposed Settlement Administrator (Epiq), including the Notice Plan ("Azari Declaration") (Ex. 3 hereto).

## II.    FACTUAL BACKGROUND

### A.    Overview of the Litigation

On or around June 2, 2022, M.C. Dean identified an Incident that involved unauthorized access to its network. M.C. Dean's investigation of the Incident determined that a threat actor potentially accessed a database containing the names, dates of birth, Social Security numbers, and driver's license numbers of current and former employees. M.C. Dean provided notice of the Incident on or about September 14, 2022. Affected individuals immediately began filing class action lawsuits against M.C. Dean. Plaintiff Domitrovich filed a putative Class Action Complaint in the United States District Court for the Eastern District of Tennessee. Plaintiff Gussie subsequently filed a putative Class Action Complaint in the Eastern District of Virginia. On April 21, 2023, Plaintiffs filed a Consolidated Class Action Complaint (the "Complaint").

In the Complaint, Plaintiffs assert claims against M.C. Dean for: negligence; breach of implied contract; and declaratory judgment. M.C. Dean denies the allegations and the claims made in the Complaint. M.C. Dean moved to dismiss the complaint and the Court denied the motion, allowing the claims to proceed.

On September 25, 2023, the parties participated in a full-day mediation facilitated by United States Magistrate Judge John F. Anderson. After a full day of negotiations, the parties came to an agreement in principle on the amount of the $750,000.00 Settlement Fund, and later finalized the other material terms in a Term Sheet. The Parties thereafter negotiated and finalized the Settlement Agreement and its exhibits in December 2023.

While the negotiations were professional throughout, they were marked by significant factual and legal disputes impacting the value of the case. With Judge Anderson's assistance, the Parties were able to reach a resolution. At all times the negotiations were made at arm's-length, and free of collusion of any kind. Attorneys' fees were not discussed in any manner until the Parties had reached agreement on the material terms of the settlement, including the payment of the Settlement Fund. Maxey Decl. ¶¶ 16-17.

**B.     The Terms of the Proposed Settlement**

The following are the material terms of the settlement:

**1.     The Settlement Class**

The proposed Settlement Class is defined as: "[A]ll individuals whose Personal Identifying Information ('PII') was impacted by the Incident that was discovered on June 2, 2022 (the "Incident")."  S.A. ¶ II.B. Excluded from the Settlement Class are: (1) the Judge and Magistrate Judge presiding over the Lawsuits, any members of the Judges' respective staffs, and immediate members of the Judges' respective families; (2) officers, directors, members and shareholders of Defendant; (3) persons who timely and validly request exclusion from and/or opt-out of the Settlement Class; (4) the successors and assigns of any such excluded persons; and (5) any person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity or occurrence of the Incident or who pleads nolo contendere to any such charge. *Id*. Defendant represents that the Settlement Class contains approximately 45,499 individuals.

**2.     The Settlement Fund**

M.C. Dean will pay $750,000 into a Settlement Fund for class benefits, notice and administration costs, fees, expenses, and service awards to the Class Representatives. *Id.* ¶ IV.A.

If there is no final approval of the settlement, any amount remaining in the Settlement Fund will be returned to M.C. Dean. *Id.* Absent a rejection of this proposed settlement by the Court, no proceeds will revert to M.C. Dean for any other reason. *Id.* The specific benefits available to Settlement Class Members are detailed in the Settlement Agreement, and include:

- **<u>Ordinary Out-of-Pocket Losses and Attested Time.</u>** All Settlement Class Members may submit a claim for reimbursement for "Ordinary" Out-of-Pocket Losses and Attested Time up to $500 per individual. S.A. ¶ V.B.1.

  "Ordinary" Out-of-Pocket Losses are unreimbursed costs or expenditures incurred by a Class Member in responding to notice of the Incident that were incurred between September 14, 2022 and the Claims Deadline, as result of the Incident. *Id.* ¶ V.B.1.a.

  Settlement Class Members with Ordinary Out-of-Pocket Losses may also submit a claim for up to 3 hours of time spent remedying issues related to the Incident at a rate of $35 per hour, but only if at least 1 full hour was spent. *Id.* ¶ V.B.1.c. Settlement Class Members must provide an attestation and a brief description of (1) the actions taken in response to the Incident and (2) the time associated with each action ("Attested Time"). *Id.* Reimbursement for Attested Time is included in the total of up to $500 per person for Out-of-Pocket Losses. *Id.*

- **<u>Extraordinary Out-of-Pocket Losses and Attested Time.</u>** Settlement Class members who believe they have suffered identity theft, fraud, or other extraordinary losses may

submit a claim for Extraordinary Out-of-Pocket Losses up to $8,000 per individual. S.A. ¶ V.B.2.

"Extraordinary Out-of-Pocket Losses" are proven monetary losses incurred by a Settlement Class Member that are more likely than not caused by the Incident and are losses that are not already covered by one or more of the normal reimbursement categories. *Id.* ¶ V.B.2.a. Extraordinary Out-of-Pocket Losses are actual, documented, and unreimbursed costs, expenses, losses or charges incurred as a result of identity theft or identity fraud, falsified tax returns, or other possible misuse of the Settlement Class Member's personal information. *Id.*

- **<u>Alternative Cash Payment.</u>** Settlement Class Members may, in lieu of making a claim for reimbursement of Ordinary and/or Extraordinary Out-of-Pocket Losses and Attested Time, elect to receive a cash payment in an amount equal to $225, subject to upward or downward proration. S.A. ¶ V.B.3.

Settlement Class Members seeking reimbursement for out-of-pocket losses, attested time, or any of the cash payments must complete and submit either a written or online Claim Form to the Claims Administrator, postmarked or electronically submitted on or before the Claims Deadline. *Id.* ¶ V.A. For out-of-pocket losses claims, the claimant must provide documentation supporting their claim (*id.* ¶¶ V.B.1.b, V.B.2.b). Settlement Class Members seeking reimbursement of Extraordinary Out-of-Pocket Losses must verify the claim with an attestation that the claimant believes that the losses or expenses claimed were incurred as a result of the

Incident. *id*. ¶ V.B.2.b.

The Settlement Agreement provides that claims for Alternative Cash Payments will be increased or decreased pro rata to consume the remaining amount of the Settlement Fund after payment for Ordinary and/or Extraordinary Out-of-Pocket Losses, Attested Time, notice and administration costs, service award payments approved by the Court, and attorneys' fees and expenses awarded by the Court. *Id.* ¶ V.B.3.

### 3. Proposed Injunctive Relief—Business Practice Commitments

M.C. Dean has also agreed, to the extent there is no legal, contractual or regulatory need for the information, to make good faith efforts to encrypt, delete or redact from its Internet-accessible systems any Social Security number or driver's license number of terminated employees who have not been employed by Defendant since January 1, 2013.

### 4. Proposed Notice and Claims Program

Proposed Class Counsel have retained, and request that the Court appoint, Epiq as Settlement Administrator to provide notice to Settlement Class Members and to process claims. The Notice Plan satisfies the "best notice practicable" standard pursuant to Rule 23 of the Federal Rules of Civil Procedure by giving direct summary postcard notice to the 45,499 Settlement Class Members via U.S. mail. Azari Decl. ¶¶ 10, 19, 32. Contact information is available for virtually all Settlement Class members. Moreover, the Long Form Notice will be posted on the Settlement Website, along with other important documents such as the Settlement Agreement, and a toll-free help line will be available to answer Settlement Class Members' questions. The individual notice effort alone is likely to reach at least 90% of the Settlement Class (and likely higher). *Id.* ¶ 19. In proposed Class Counsel's experience, and according to Epiq, the reach of the Notice Plan meets that of other court-approved notice programs, and has been designed to meet due process

requirements, including the "desire to actually inform" requirement. The Notice Plan is thus the best notice practicable under the circumstance of this case. *Id*. ¶¶ 10, 19, 32.

The claims process similarly draws upon the most up-to-date techniques to facilitate participation, including the ability to submit claims electronically on the Settlement Website or by mail. Epiq, the proposed Settlement Administrator, is a widely-regarded expert with the experience and capability to handle a case of this magnitude. *See generally* Azari Decl.

### 5. Attorneys' Fees and Expenses and Service Awards

Proposed Class Counsel may request a fee of up to 33 percent of the Settlement Fund, or $250,000.00, and reimbursement of litigation expenses in an amount not to exceed $15,000.00 to be paid exclusively from the Settlement Fund. S.A. ¶ II.V. Class Counsel may also request service awards of up to $5,000 each for the two Settlement Class Representatives to be paid exclusively from the Settlement Fund. *Id*. ¶ II.BB. M.C. Dean takes no position on these requests.

### 6. Releases

The Settlement Class will release M.C. Dean from claims that were or could have been asserted in this case. The releases are detailed in the Settlement Agreement. *Id.* ¶¶ II.X, II.Y, II.GG, IX.

## III. ARGUMENT

### A. The Court Should Preliminarily Approve the Settlement and Direct Notice to the Settlement Class

#### 1. Legal Standards

In the event of a settlement and proposal to certify a class for settlement purposes, the Court must determine whether to issue notice to the class. Fed. R. Civ. P. 23(e)(1). The parties are obligated to provide sufficient information to enable the Court to determine whether notice is

appropriate, and the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties' showing that the court will likely be able to (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." *Id*.

Moreover, Rule 23(e)(2) provides that a proposed settlement may be approved only after a hearing and on a "finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Approval of a proposed settlement is committed to the sound discretion of the court. *See Berry v. Schulman*, 807 F.3d 600, 608 (4th Cir. 2015). In determining whether a settlement is fair, reasonable, and adequate, the Court must consider whether:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
>> (i) the costs, risks, and delay of trial and appeal;
>>
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>>
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

The Court's Rule 23(e) obligations are addressed with a "two-level analysis." *In re The Mills Corp. Sec. Litig*., 265 F.R.D. 246, 254 (E.D. Va. 2009). To determine whether a settlement is fair, the Court considers the four factors set forth by the Fourth Circuit in *Jiffy Lube*: "(1) the posture of the case at the time settlement was proposed; (2) the extent of discovery that had been conducted; (3) the circumstances surrounding the negotiations; and (4) the experience of counsel

. . . ." *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 159 (4th Cir. 1991). To determine whether a settlement is adequate, the courts also look to: "(1) the relative strength of the plaintiffs' case on the merits, (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial, (3) the anticipated duration and expense of additional litigation, (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment, and (5) the degree of opposition to the settlement." *Id*.

Evaluation under these enumerated factors confirms that the proposed settlement is fair, adequate, and reasonable; accordingly, the Court should direct that notice of the Settlement issue to the Settlement Class.

### 2.    **The Class Was Adequately Represented.**

"[T]he adequacy requirement is met when: (1) the named plaintiff does not have interests antagonistic to those of the class; and (2) plainitff's attorneys are 'qualified, experienced, and generally able to conduct the litigation.'" *Brown v. Transurban USA, Inc.*, 318 F.R.D. 560, 567 (E.D. Va. 2016). Here, the Settlement Class Representatives have the same interests as other class members as they are asserting the same claims and share the same injuries. Further, Proposed Class Counsel's experience and qualifications warrant their appointment as Class Counsel in this litigation, and the record shows proposed Class Counsel worked diligently to litigate and ultimately bring this case to resolution. Maxey Decl. ¶¶ 3-12; see also *In re: Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales Practices & Prod. Liab. Litig.*, 952 F.3d 471, 485 (4th Cir. 2020) (finding counsel's experience in complex civil litigation supported fairness of settlement).

### 3. The Proposed Settlement Was Negotiated at Arm's Length.

The Court can safely conclude this settlement was negotiated at arm's length, without collusion, based on the terms of the settlement itself; the length and difficulty of the negotiations; and the involvement of an experienced mediator, Judge John Anderson. *See In re NeuStar, Inc. Sec. Litig.*, No. 1:14–CV–885(JCC/TRJ), 2015 WL 5674798, at *10 (E.D. Va. Sept. 23, 2015) (adversarial encounters support a finding of arms' length negotiations). This factor supports a finding that the Court will likely be able to approve the settlement.

### 4. The Relief is Fair, Reasonable, and Adequate.

The relief offered to Class Members in the Proposed Settlement is more than adequate under the factors outlined in Rule 23(e)(2)(C). Settlement Class Members are entitled to benefits that are tailored to the relief sought through the litigation: recovery of up to $500 in Ordinary Out-of-Pocket Losses and Attested Time; recovery of up to $8,000 in Extraordinary Out-of-Pocket Losses and Attested Time; and Alternative Cash Payments. M.C. Dean's agreed conditional deletion of certain former employees' personal information is likewise an important benefit flowing to Settlement Class Members, whose sensitive personal information may still reside with M.C. Dean.

Proposed Class Counsel, a group with extraordinary experience in leading major data breach class actions, strongly believe that the relief is fair, reasonable, and adequate. Maxey Decl. ¶¶ 27-32. The Court may rely upon such experienced counsel's judgment. *See, e.g.*, *Nelson v. Mead Johnson & Johnson Co.*, 484 F. App'x 429, 434 (11th Cir. 2012) ("Absent fraud, collusion, or the like, the district court should be hesitant to substitute its own judgment for that of counsel.")

That the relief is fair, reasonable, and adequate is further confirmed by considering the four specific factors enumerated in Rule 23(e)(2).

5. **The Costs, Risks and Delay of Trial and Appeal.**

Plaintiffs face significant risks and costs should they continue to litigate the case due to the potential expense and length of continued proceedings necessary to prosecute the litigation against M.C. Dean through motion practice, trial, and potential appeals. Further, if Plaintiffs prevailed on their intended motion for class certification and successfully defeated Defendants' intended motions thus proceeding to trial, Plaintiffs would have faced significant risk, cost, and delay. Plaintiffs face the uncertain outcome and risk of further litigation, as well as the difficulties and delays inherent in such litigation.

In contrast to the risks, costs, and delay posed by continued litigation and potential trial, the proposed Settlement provides certain, substantial, and immediate relief to the proposed Settlement Class without delay. It ensures that Settlement Class Members who submit valid claims for Ordinary and/or Extraordinary Out-of-Pocket Losses, Attested Time or cash payments will receive guaranteed compensation now. It also requires injunctive relief that will help protect Class Member data from potential subsequent exposure.

The substantial costs, risks, and delay of a trial and appeal support a finding that the proposed Settlement is adequate.

6. **The Method of Distributing Relief is Effective.**

The distribution process will be efficient and effective. The available relief is detailed clearly in the Notice, which will be provided to all Settlement Class Members, and lays out the benefits to which they are entitled through submission of an approved claim.

As an initial matter, the proposed Notice Plan includes dissemination of direct, individual summary notice by postcard. The total potential Settlement Class size is approximately 45,499 people and contact information (to provide individual notice) is available for virtually all

Settlement Class members. The Settlement Administrator expects that the individual notice effort alone will reach at least 90% of the Settlement Class (and likely higher). Azari Decl. ¶ 19.

Therefore, Settlement Class Members will receive effective and efficient notice of the relief, which will be distributed as follows:

Settlement Class Members are entitled to make claims online via the Settlement Website or by mail for reimbursement for cash payments or Ordinary and/or Extraordinary Out-of-Pocket Losses, such as costs associated with accessing or freezing/unfreezing credit reports with any credit reporting agency, fraudulent expenses or charges, and compensation for a certain number of hours of "Attested Time" spent remedying issues related to the Incident, fraud, identity theft, or other misuse of personal information. *See* S.A. ¶ V. Settlement Class Members need only submit a Claim Form on the Settlement Website or by mail accompanied by reasonable documentation showing the claimed expenses to establish Out-of-Pocket Losses, or a self-certification of their Attested Time. *Id.*

Because Settlement Class Members may make claims through a simple online form or by mail the method of distributing the relief is both efficient and effective, and the proposed Settlement is adequate under this factor.

**7. The Terms Relating to Attorneys' Fees are Reasonable.**

Proposed Class Counsel will request a fee expressed as a percentage of the value conferred by the Settlement on the Settlement Class, and for reimbursement of expenses incurred in prosecuting and settling this case. S.A. ¶ IV.D. Where, as here, a class settlement creates a non-reversionary common fund, fees are awarded on a "percentage of the fund" approach. *See, e.g.*, *Transurban*, 318 F.R.D. at 575. Plaintiffs' request for Attorneys' Fees and Expenses will be filed with the Court at least 14 days before the Objection deadline. In the settlement negotiations,

attorneys' fees were not discussed in any manner until the Parties had reached agreement on the material terms of the Settlement, including the payment of the Settlement Fund. Maxey Decl. ¶ 17. M.C. Dean has agreed not to oppose any request for fees not in excess of 33 percent of the Settlement Fund, S.A. ¶ IV.D, but the ultimate fee award will be based on an application to the Court based on Fourth Circuit law with the opportunity for comment from Settlement Class Members.

Importantly, the Settlement Agreement is not conditioned upon the Court's approval of the fee award. Accordingly, at this stage, the Court can and should conclude that it is likely to approve the Settlement for purposes of sending notice to the Settlement Class, even if it has not yet concluded whether and in what amount it would award attorneys' fees and expenses. The proposed Settlement is adequate under this factor.

### 8. Any Agreement Required to be Identified under Rule 23(e)(3).

Rule 23(e) mandates that "[t]he parties seeking approval must file a statement identifying any agreement made in connection with the proposal," and that the Court must then take into account any such agreements when determining whether the relief provided in the settlement is adequate. *See* Fed. R. Civ. P. 23(e)(2)-(3).

This factor weighs in favor of finding that the Proposed Settlement is adequate.

### 9. The Proposed Settlement Treats Class Members Equitably.

Finally, the proposal treats all class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2)(D). All Settlement Class Members will have the same opportunity to file a claim for Ordinary and Extraordinary Out-of-Pocket Losses and Attested Time or an Alternative Cash Payment; this means that monetary compensation will be apportioned in accordance with each claimant's alleged injury. In the event claims exceed the available settlement funds, all claims will

be reduced *pro rata*, with no class members obtaining any greater relative benefit over another. The factor likewise supports a finding that the Court will be able to approve the Proposed Settlement, and that class notice is appropriate.

### B. The Proposed Settlement Class Meets the Requirements for Certification

To issue notice, the Court should decide it will "likely be able to . . . certify the class for purposes of judgment." Fed. R. Civ. P. 23(e)(1)(B); *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Such a decision should not be difficult. Settlement classes are routinely certified in similar consumer data breach cases. *See, e.g., Abubaker v. Dominion Dental USA, Inc.*, No. 1:19-cv-01050, 2021 WL 6750844 (E.D. Va. Nov. 19, 2021) (Brinkema, J.); *Hutton v. Nat'l Bd. of Examiners in Optometry, Inc.*, No. 1:16-c-03025, 2019 WL 3183651 (D. Md. July 15, 2019); *In re: Equifax Inc. Customer Data Security Breach Litig.*, No. 1:17-md-2800, 2020 WL 256132 (N.D. Ga. March 17, 2020) ), *aff'd in relevant part* 999 F.3d 1247 (11th Cir. 2021), *cert. denied sub nom. Huang v. Spector*, 142 S. Ct. 431 (2021), *and cert. denied sub nom. Watkins v. Spector*, No. 21-638, 2022 WL 89334 (U.S. Jan. 10, 2022); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299 (N.D. Cal. 2018). There is nothing different about this case, which is demonstrated by examining the requirements of Rule 23(a) and (b).[2]

### 1. The Rule 23(a) Requirements Are Satisfied.

*Numerosity:* The proposed class consists of approximately 45,499 U.S. residents, indisputably rendering individual joinder impracticable. *See Jeffreys v. Commc'ns Workers of Am. AFL–CIO*, 212 F.R.D. 320, 322 (E.D. Va. 2003) (noting that "where the class numbers twenty-five or more, joinder is generally presumed to be impracticable").

---

[2] There exists a fulsome record supporting class certification. *See* Docs. 1259, 1261 (Plaintiffs' motion for class certification and memorandum in support); Doc. 1557 (Plaintiffs' reply in support of class certification).

***Commonality:*** "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury, such that all their claims can productively be litigated at once." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-350 (2011) (internal citations omitted). This requires that the determination of the common question "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 350 "Even a single common question will do." *Id.* at 359. All Settlement Class Members are alleged to have suffered the same injury—theft of their personal data in the Incident—and are asserting the same legal claims. Accordingly, common questions of law and fact abound. *See, e.g.*, *Dominion*, 2021 WL 6750844, at * 3; *Equifax*, 2020 WL 256132, at *11-12; *Anthem*, 327 F.R.D. at 309.

***Typicality:*** Typicality under Rule 23(a)(3) requires an inquiry into the "representative parties' ability to represent a class . . . ." *Deiter v. Microsoft Corp.*, 436 F.3d 461, 466 (4th Cir. 2006). "The premise of the typicality requirement is simply stated: as goes the claim of the named plaintiff, so go the claims of the class." *Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 340 (4th Cir. 1998). In other words, the "plaintiff's claim cannot be so different from the claims of absent class members that their claims will not be advanced by plaintiff's proof of his own individual claim." *Deiter*, 436 F.3d at 466-67. This requirement is readily satisfied in data breach cases. The Settlement Class Representatives' claims are typical of other class members because they arise from the same Incident and involve the same overarching legal theories, including the theories that M.C. Dean breached its contracts with Settlement Class Representatives and class members and failed in its common-law duty to protect their personal information. *See, e.g.*, *Dominion*, 2021 WL 6750844, at *3; *Equifax*, 2020 WL 256132, at *12.

***Adequacy of Representation:*** "The adequacy inquiry . . . serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc. v.*

*Windsor*, 521 U.S. 591, 625 (1997). Settlement Class Representatives do not have any interests antagonistic to other class members and have retained lawyers who are abundantly qualified and experienced, satisfying the adequacy requirement. Maxey Decl. ¶ 31.

### 2. The Rule 23(b)(3) Requirements Are Satisfied.

Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members," and that class treatment is "superior to other available methods for fairly and efficiently adjudicating the controversy." One part of the superiority analysis—manageability—is irrelevant for purposes of certifying a settlement class. *Transurban*, 318 F.R.D. at 569.

***Predominance:*** Rule 23(b)(3)'s predominance requirement tests whether a proposed class is "sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). The predominance inquiry measures the relative weight of the common questions as against individual ones. *Amchem*, 521 U.S. at 624. "If the 'qualitatively overarching issue' in the litigation is common, a class may be certified notwithstanding the need to resolve individualized issues." *Soutter v. Equifax Info. Servs., LLC*, 307 F.R.D 183, 214 (E.D. Va. 2015) (citing *Ealy v. Pinkerton Gov't Servs.*, 514 F. App'x 299, 305 (4th Cir. 2013)). Common liability issues often predominate where class members "all assert injury from the same action." *Gray v. Hearst Commc'ns, Inc.*, 444 F. App'x 698, 701–02 (4th Cir. 2011); *see also Stillmock v. Weis Markets, Inc.*, 385 F. App'x 267, 273 (4th Cir. 2010) (finding common issues predominated where class members were exposed to "the identical risk of identity theft in the identical manner by the repeated identical conduct of the same defendant.").

Here, as in other data breach cases, common questions predominate because all claims arise out of a common course of conduct alleged by M.C. Dean. *See, e.g.*, *Dominion*, 2021 WL 6750844,

at *3; *Equifax*, 2020 WL 256132, at *13; *Anthem,* 327 F.R.D. at 311-16. The focus on a defendant's security measures in a data breach class action "is the precise type of predominant question that makes class-wide adjudication worthwhile." *Anthem*, 327 F.R.D. at 312.

**Superiority:** "[T]he purpose of the superiority requirement is to assure that the class action is the most efficient and effective means of resolving the controversy . . . ." 7AA Charles Wright, Arthur Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1779 (3d ed. 2005). Litigating the same claims of 98 million Americans through individual litigation would obviously be inefficient. The superiority requirement thus is satisfied. *See Equifax*, 2020 WL 256132, at *14; *Anthem,* 327 F.R.D. at 315-16.

### C. The Court Should Approve the Notice Plan, Notices, and Claim Form, and Appoint the Settlement Administrator.

To satisfy the requirements of both Rule 23 and due process, Rule 23(c)(2)(B) provides that, "[f]or any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). Rule 23(e)(1) similarly requires that notice be reasonably disseminated to those who would be bound by the court's judgment. Fed. R. Civ. P. 23(e)(1). The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

Plaintiffs request that the Court appoint Epiq as the Settlement Administrator and approve the Notice Plan submitted by Epiq. *See* Azari Decl. The Notice Plan is uncomplicated. M.C. Dean will generate and provide to Epiq a Class List no later than 30 days after entry of an order directing class notice. Settlement Agreement ¶ VI.B. Using the information in that list, Epiq will provide

direct notice by mailed postcard. Combined with other supplemental notice methods, Epiq expects the notice to reach approximately 90% of Settlement Class Members, easily meeting the requirements of Rule 23 and due process. *See, e.g.*, Federal Judicial Center, "Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide" (2010) (recognizing the effectiveness of notice that reaches between 70 and 95 percent of the class). When implemented, the Notice Plan will provide the best notice practicable under the circumstances. Azari Decl. ¶¶ 10, 19, 32.

The Court should also approve the proposed form of notice attached as Exhibit 2 to the Settlement Agreement ("Class Notice"), which satisfies all of the criteria of Rule 23. The Notice is clear and straightforward and provides persons in the proposed Settlement Class with enough information to evaluate whether to participate in the settlement. The Class Notice also advises the proposed Settlement Class how to exclude themselves from the settlement, and how to object to the settlement, including the requested attorney fees and costs. Thus, the Class Notice satisfies the requirements of Rule 23. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 808 (1985) (explaining a settlement notice must provide settlement class members with an opportunity to present their objections to the settlement).

Finally, the Court should approve the Claim Form attached as Exhibit 1 to the Settlement Agreement. The Claim Form is written in plain language and can be submitted online or printed and mailed to the Settlement Administrator.

### D. The Court Should Appoint Settlement Class Counsel

When certifying a class, Rule 23 requires a court to appoint class counsel that will fairly and adequately represent the class members. Fed. R. Civ. P. 23(g)(1)(B). In making this determination, the Court considers counsel's work in identifying or investigating potential claims;

experience in handling class actions or other complex litigation and the types of claims asserted in the case; knowledge of the applicable law; and resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i–iv).

The Court should approve Laura Van Note of Cole & Van Note and Ryan D. Maxey of Maxey Law Firm, P.A. as Settlement Class Counsel. Throughout this case Proposed Class Counsel have demonstrated the hard work, legal scholarship, experience, and resources they bring to bear, ultimately resulting in the settlement now before the Court. The Court should thus appoint them as Settlement Class Counsel under Rule 23(g).

### E.  Timeline of Settlement Events

For the Court's convenience, Plaintiffs propose the following dates and deadlines leading to a final approval hearing.

| ACTION | DATE |
|---|---|
| Defendants Provide Class Member List | Within 30 days following entry of Preliminary Approval Order |
| Notice Date | 30 days following entry of Preliminary Approval Order |
| Proof of Notice Submitted | At least 10 days prior to the Final Approval Hearing |
| Motion for Attorneys' Fees, Expenses, and Service Awards to the Plaintiffs | 14 days prior to the Objection Deadline |
| Exclusion / Opt-Out Deadline | 60 days after Notice Date |
| Objection Deadline | 60 days after Notice Date |
| Deadline to Submit Claims | 90 days after Notice Date |

| Final Approval Brief and Response to Objections Due | At least 10 days prior to the Final Approval Hearing |
|---|---|
| Final Approval Hearing | (To be scheduled no earlier than 175 days after entry of Preliminary Approval Order) |

## IV.     CONCLUSION

For the reasons set forth set forth above, Plaintiffs request the Court enter the order proposed by the Parties directing the Settlement Class be notified of the proposed settlement in the manner set forth in the Notice Plan and schedule a Final Approval Hearing.

Dated: January 29, 2024

Respectfully Submitted,

**WEBSTER BOOK LLP**

*/s/ Steven T. Webster*
Steven T. Webster (V.S.B. No. 31975)
300 N. Washington St., Suite 404
Alexandria, Virginia 22314
(888) 987-9991

**COLE & VAN NOTE**

Laura Van Note, Esq. (CA S.B. #310160)
555 12th Street, Suite 1725
Oakland, CA 94607
(510) 891-9800

**MORGAN & MORGAN COMPLEX BUSINESS DIVISION**

Patrick A. Barthle
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
(813) 223-5505
pbarthle@ForThePeople.com

**MAXEY LAW FIRM, P.A.**

Ryan D. Maxey
107 N. 11th St. #402
Tampa, Florida 33602
(813) 448-1125
ryan@maxeyfirm.com

*Attorneys for Plaintiffs and the Proposed Class*

## CERTIFICATE OF SERVICE

I hereby certify that on January 29, 2024, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notice of electronic filing to all counsel of record.

<div style="margin-left: 45%;">

*/s/ Steven T. Webster*
Steven T. Webster (VSB No. 31975)
WEBSTER BOOK LLP

</div>