**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

RUSSELL DOMITROVICH and THOMAS
GUSSIE, individually and on behalf of all
others similarly situated,

       Plaintiffs,

  v.

       Civil Action No. 1:23-cv-00210-CMH-JFA

M.C. DEAN, INC.,

       Defendant.

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION**
**FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**
**AND CERTIFICATION OF SETTLEMENT CLASS**

Plaintiffs move for entry of an order granting final approval of this proposed class action settlement and certifying the settlement class. For the reasons set forth below, Plaintiffs respectfully request that the Court, after the final approval hearing scheduled for August 2, 2024, grant this motion, grant Plaintiffs' Motion for an Award of Attorneys' Fees, Reimbursement of Expenses, and Service Award to Plaintiffs, and enter a final judgment dismissing this case.

## I.    <u>Introduction</u>

Plaintiffs, by and through the undersigned Settlement Class Counsel,[1] on behalf of themselves and the Settlement Class, respectfully submit this Memorandum of Law in support of their motion pursuant to Federal Rule of Civil Procedure ("Rule") 23(e) requesting final approval of this proposed class action settlement ("Settlement") on the terms set forth in the Settlement

---

[1] The Court appointed (1) Laura Van Note of Cole & Van Note and (2) Ryan D. Maxey of Maxey Law Firm. (ECF No. 62 ¶ 2).

1

Agreement ("S.A.") (ECF No. 59-1) and for certification of the Settlement Class.[2]

If approved, the Settlement will successfully resolve the claims of approximately 45,499 individuals nationwide who were notified of a data incident first discovered by Defendant on or about June 2, 2022, and announced by Defendant on or about September 14, 2022 (the "Incident"). The Settlement brings meaningful resolution and significant benefits to the Settlement Class without requiring further delay, risk, and expense. As discussed below, the Settlement calls for Defendant to establish a non-reversionary Qualified Settlement Fund of $750,000 ("Settlement Fund") for the benefit of eligible Class Members. Defendant also has committed, to the extent there is no legal, contractual or regulatory need for the information, Defendant agrees to make good faith efforts to encrypt, delete or redact from its Internet-accessible systems any Social Security number or driver's license number of terminated employees who have not been employed by Defendant since January 1, 2013. Further, Defendant, through the Settlement Fund, will pay all costs of notice and administration ($93,872.51 incurred to date and a cap of $108,837.00 through completion). **Exhibit 1**, Declaration of Cameron R. Azari, Esq. of Epiq Class Action and Claims Solutions, Inc. Regarding Settlement Administration ("Azari Decl.") ¶ 26.

On February 1, 2024, the Court preliminarily approved the Settlement, finding that the Court "will likely be able to approve the proposed Settlement as fair, reasonable, and adequate."

---

[2] Unless otherwise defined, all capitalized terms have the meanings set forth in the Settlement Agreement or in the Declaration of Ryan D. Maxey in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement ("Maxey MPA Decl.") (ECF No. 59-2) and the Declaration of Ryan D. Maxey in Support of Plaintiffs' Motion for an Award of Attorneys' Fees, Reimbursement of Expenses, and Service Award to Plaintiffs ("Decl. in Support of Fees, Expenses, and Service Awards") (ECF No. 64-1). Both Declarations are an integral part of this submission and, for the sake of brevity herein, Plaintiffs respectfully refer the Court to the Declarations for a detailed description of, inter alia: the procedural history of the Action and the claims asserted, the negotiations resulting in the Settlement and the risks of continued litigation.

(ECF No. 62) ("Preliminary Approval Order") ¶ 1. The Court-ordered Notice Plan has since been executed; nothing has changed to alter the Court's initial assessment that the Settlement is fair, reasonable, and adequate. The Settlement Class's reaction to the Settlement has been overwhelmingly positive. Of the 45,499 individual potential Class Members who were sent Notice, only five (5) have timely requested exclusion and none have submitted timely objections. This response weighs in favor of final approval.

For the reasons detailed below, Plaintiffs and Class Counsel respectfully submit that the Settlement meets the standards for final approval under Rule 23, and is a fair, reasonable, and adequate result for the Settlement Class. Plaintiffs request that the Court finally approve the Settlement, certify the settlement class, grant Plaintiffs' Motion for an Award of Attorneys' Fees, Reimbursement of Expenses, and Service Award to Plaintiffs, and enter a final judgment dismissing this case.

## II.      <u>Summary of the Action and Settlement</u>

Plaintiffs respectfully refer the Court to their Memorandum of Law in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement (ECF No. 59) and their Memorandum of Law in Support of Plaintiffs' Motion for an Award of Attorneys' Fees, Reimbursement of Expenses, and Service Award to Plaintiffs (ECF No. 64) for a thorough recitation of the substantive and procedural background of this litigation. For the purposes of final approval, Plaintiffs highlight the following:

### A.      Background

On or around June 2, 2022, M.C. Dean identified an Incident that involved unauthorized access to its network.  M.C. Dean's investigation of the Incident determined that a threat actor potentially accessed a database containing the names, dates of birth, Social Security numbers, and

driver's license numbers of current and former employees. M.C. Dean provided notice of the Incident on or about September 14, 2022. Affected individuals immediately began filing class action lawsuits against M.C. Dean. Plaintiff Domitrovich filed a putative Class Action Complaint in the United States District Court for the Eastern District of Tennessee.  Plaintiff Gussie subsequently filed a putative Class Action Complaint in the Eastern District of Virginia. On April 21, 2023, Plaintiffs filed a Consolidated Class Action Complaint (the "Complaint").

In the Complaint, Plaintiffs assert claims against M.C. Dean for: negligence; breach of implied contract; and declaratory judgment.  M.C. Dean denies the allegations and the claims made in the Complaint.  M.C. Dean moved to dismiss the complaint and the Court denied the motion, allowing the claims to proceed.

On September 25, 2023, the parties participated in a full-day mediation facilitated by United States Magistrate Judge John F. Anderson. After a full day of negotiations, the parties came to an agreement in principle on the amount of the $750,000.00 Settlement Fund, and later finalized the other material terms in a Term Sheet. The Parties thereafter negotiated and finalized the Settlement Agreement and its exhibits in December 2023.

While the negotiations were professional throughout, they were marked by significant factual and legal disputes impacting the value of the case. With Judge Anderson's assistance, the Parties were able to reach a resolution. At all times the negotiations were made at arm's-length, and free of collusion of any kind. Attorneys' fees were not discussed in any manner until the Parties had reached agreement on the material terms of the settlement, including the payment of the Settlement Fund.

### B.    Terms of the Settlement

If the Settlement receives final approval, the $750,000 non-reversionary Qualified

Settlement Fund established by Defendant will be used to provide:

- **<u>Ordinary Out-of-Pocket Losses and Attested Time.</u>** All Settlement Class Members may submit a claim for reimbursement for "Ordinary" Out-of-Pocket Losses and Attested Time up to $500 per individual. S.A. ¶ V.B.1.

  "Ordinary" Out-of-Pocket Losses are unreimbursed costs or expenditures incurred by a Class Member in responding to notice of the Incident that were incurred between September 14, 2022 and the Claims Deadline, as result of the Incident. *Id.* ¶ V.B.1.a.

  Settlement Class Members with Ordinary Out-of-Pocket Losses may also submit a claim for up to 3 hours of time spent remedying issues related to the Incident at a rate of $35 per hour, but only if at least 1 full hour was spent. *Id.* ¶ V.B.1.c. Settlement Class Members must provide an attestation and a brief description of (1) the actions taken in response to the Incident and (2) the time associated with each action ("Attested Time"). *Id.* Reimbursement for Attested Time is included in the total of up to $500 per person for Out-of-Pocket Losses. *Id.*

- **<u>Extraordinary Out-of-Pocket Losses and Attested Time.</u>** Settlement Class members who believe they have suffered identity theft, fraud, or other extraordinary losses may submit a claim for Extraordinary Out-of-Pocket Losses up to $8,000 per individual. S.A. ¶ V.B.2.

"Extraordinary Out-of-Pocket Losses" are proven monetary losses incurred by a Settlement Class Member that are more likely than not caused by the Incident and are losses that are not already covered by one or more of the normal reimbursement categories. *Id.* ¶ V.B.2.a. Extraordinary Out-of-Pocket Losses are actual, documented, and unreimbursed costs, expenses, losses or charges incurred as a result of identity theft or identity fraud, falsified tax returns, or other possible misuse of the Settlement Class Member's personal information. *Id.*

- **Alternative Cash Payment.** Settlement Class Members may, in lieu of making a claim for reimbursement of Ordinary and/or Extraordinary Out-of-Pocket Losses and Attested Time, elect to receive a cash payment in an amount equal to $225, subject to upward or downward proration. S.A. ¶ V.B.3.

The Settlement Agreement provides that claims for Alternative Cash Payments will be increased or decreased *pro rata* to consume the remaining amount of the Settlement Fund after payment for Ordinary and/or Extraordinary Out-of-Pocket Losses, Attested Time, notice and administration costs, service award payments approved by the Court, and attorneys' fees and expenses awarded by the Court. Id. ¶ V.B.3.

In addition to the monetary relief and credit monitoring services provided, Defendant has agreed, to the extent there is no legal, contractual or regulatory need for the information, to make good faith efforts to encrypt, delete or redact from its Internet-accessible systems any Social Security number or driver's license number of terminated employees who have not been employed by Defendant since January 1, 2013.

In all, the total settlement value is greater than the $750,000 that Defendant is paying to create the Qualified Settlement Fund and for costs of notice and claims administration.

### III.    Preliminary Approval and Notice

On January 29, 2024, Plaintiffs moved the Court to grant preliminary approval of the Settlement, approve the proposed Notice Plan, direct notice be given to the Settlement Class, and Schedule a Final Approval Hearing. (ECF No. 58). On February 1, 2024, the Court granted Plaintiffs' motion. (ECF No. 62). Pursuant to the Preliminary Approval Order, the Settlement Administrator implemented the Notice Plan, disseminating notices to 42,364 potential members of the Settlement Class via U.S. mail. *See* Azari Decl. ¶¶ 11. Notice was also provided via an internet website. *Id*. ¶¶ 17.

Notice instructed Class Members of their legal rights and options in this Settlement, including: the option to submit a Claim Form to receive monetary payment for losses suffered; the option to ask to be excluded from the Settlement and retain the right to bring an individual action against Defendant; the option to object to the Settlement; the option to attend the Final Approval Hearing; and the option to do nothing and not receive a monetary payment from the Settlement. (ECF No. 59-1 at 35-44). The deadline for Class Members to exclude themselves or object to the proposed Settlement passed on May 31, 2024, (ECF No. 62 at 10), and only five (5) exclusion requests and no objections have been received to date. Azari Decl. ¶ 20. The claim deadline was May 31, 2024,[3] and approximately 815 claims have been received to date, of which 13 were defective, 21 were denied, and 27 were duplicated. *Id.* ¶ 22.

The approved claims received to date include (i) 741 approved claims for an Alternative

---

[3] The parties agreed to treat as timely claims submitted through June 28, 2024.

Cash Payment, (ii) 10 approved claims for reimbursement of ordinary out-of-pocket expenses, including attested time, totaling $4,678.95, and (iii) 3 approved claims for reimbursement of extraordinary out-of-pocket expenses totaling $102.00. *Id.* ¶ 23. If the Court (i) grants Plaintiffs' request to award $5,000 to each Class Representative, $250,000.00 in reasonable attorneys' fees, and $5,785.08 in litigation expenses and (ii) approves $108,837.00 for the costs of notice and administration, $375,377.92 would remain for payments to Class Members. After paying $4,678.95 for approved claims for ordinary out-of-pocket expenses and $102.00 for approved claims for extraordinary out-of-pocket expenses, $370,596.97 would remain to satisfy claims for an Alternative Cash Payment. Dividing this amount equally among the 741 Alternative Cash Payment claimants would result in a payment of $500.13 to each claimant, an exceptional result in a data breach case.

## IV.    The Settlement Merits Final Approval by the Court

### A. The Notice to Settlement Class Members was Sufficient.

"[T]he adequacy of the notice [of a class action settlement] has both a constitutional and a procedural component." *McAdams v. Robinson*, 26 F.4th 149, 157 (4th Cir. 2022). "To bind an absent class member, notice to the class must provide 'minimal procedural due process protection.'" *Id.* (quoting *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985)). "'The [absent class member] must receive notice plus an opportunity to be heard and participate in the litigation.'" *Id.* (quoting *Philips Petroleum Co.*, 472 U.S. at 812). "That notice must be 'reasonably calculated, under all the circumstances, to apprise [absent class members] of the pendency of the action and afford them an opportunity to present their objections.'" *Id.* (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950)).

"On the procedural front, Federal Rule of Civil Procedure 23(e) governs notice to absent

class members." *Id.* "It requires 'direct notice in a reasonable manner to all class members who would be bound by the proposal.'" *Id.* (quoting Fed. R. Civ. P. 23(e)(1)(B)). "But it doesn't specify what the notice must say." *Id.* "Rather, the notice need only 'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.'" *Id.* (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 114 (2d Cir. 2005)). "Put another way, 'Rule 23(e) requires notice that describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Id.* (quoting *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 946 (9th Cir. 2015)).

Here, the notice "provided Class Members with, among other things, details regarding the nature of this lawsuit, the terms of the Settlement Agreement, the release of all claims under both state law and federal law, information regarding objecting to the proposed settlement, and the fairness hearing." *Boger v. Citrix Sys., Inc.*, No. 19-CV-01234-LKG, 2023 WL 3763974 (D. Md. June 1, 2023) (approving notice); *see generally* (ECF No. 59-1 at 35-44).

The notice was issued in the manner outlined in the Preliminary Approval Order. *See* Azari Decl. ¶¶ 10-17. On March 1, 2024, Epiq caused the Postcard Notice to be mailed via USPS first class mail, postage prepaid to the 42,364 Class Members. *Id.* ¶ 12. Notices returned as undeliverable were re-mailed to any new address available through USPS information, (for example, to the address provided by the USPS on returned mail pieces for which the automatic forwarding order has expired, but was still within the time period in which the USPS returned the piece with the address indicated), and to better addresses that were found using a third-party lookup service. *Id.* ¶ 14. Upon successfully locating better addresses, Postcard Notices were promptly remailed. *Id.* As of July 22, 2024, Epiq has remailed 3,902 Postcard Notices. *Id.* As of July 22,

2024, the Postcard Notice was delivered to 40,406 of the 42,364 unique, identified Settlement Class Members. *Id.* ¶ 16. This means the individual notice efforts reached approximately 95% of the identified Settlement Class Members who were sent notice. *Id.* Additionally, a Long Form Notice and Claim Form ("Notice Package") is mailed to all persons who request one via the toll-free telephone number or other means. *Id.* ¶ 15. As of July 22, 2024, Epiq mailed 74 Claim Packages as a result of such requests. *Id.*

On March 1, 2024, Epiq established a dedicated website for the Settlement with an easy to remember domain name (www.mcdeansettlement.com). *Id.* ¶ 17. Relevant documents, including the Long Form Notice, Postcard Notice, Claim Form, Preliminary Approval Order, Settlement Agreement, Complaint, and other relevant court-related documents are posted on the Settlement Website. *Id.* The Settlement Website also provides the ability for Settlement Class Members to file an online Claim Form. *Id.* In addition, the Settlement Website includes relevant dates, answers to frequently asked questions ("FAQs"), instructions for how Settlement Class Members may opt-out (request exclusion) from or object to the Settlement, contact information for the Settlement Administrator, and how to obtain other case-related information. *Id.* The Settlement Website address was prominently displayed in all notice documents. *Id.* As of July 22, 2024, there have been 1,831 unique visitor sessions to the settlement website, and 7,449 web pages have been presented. *Id.*

On March 1, 2024, Epiq established a toll-free telephone number (1-888-890-2748) for the Settlement. *Id.* ¶ 18. Callers are able to hear an introductory message, have the option to learn more about the Settlement in the form of recorded answers to FAQs, and request that a Claim Form and Notice Package be mailed to them. *Id.* This automated phone system is available 24 hours per day, 7 days per week. *Id.* The toll-free telephone number was prominently displayed in all

notice documents. *Id.* As of July 22, 2024, there have been 250 calls to the toll-free telephone number representing 667 minutes of use.

These facts confirm that notice was distributed in a reasonable manner to all class members who would be bound by the settlement and satisfied the Constitution's Due Process requirements. *See, e.g.*, *Boger*, 2023 WL 3763974, at *12 (approving notice where "the Settlement Administrator sent Notice via the United States Postal Service to 526,544 Class Members for which mailing address data was available" and "administered a settlement website and a toll-free number, through which the Class Members could obtain additional information about the Settlement"); *Feinberg v. T. Rowe Price Grp., Inc.*, 610 F. Supp. 3d 758, 766 (D. Md. 2022) (approving notice where it "was either mailed or emailed to each class member, and the administrator also set up a dedicated website and toll-free number for class members to access or call.").

## B. The Settlement Meets the Standards for Final Approval Under Rule 23(e)

"Per Federal Rule of Civil Procedure 23(e), a class action may only be settled with the court's approval." *Galloway v. Williams*, No. 3:19-CV-470, 2020 WL 7482191, at *4 (E.D. Va. Dec. 18, 2020) (Payne, J.) (citing Fed. R. Civ. P. 23(e)). "If the settlement proposal would bind all class members, a court may only approve the settlement proposal after it holds a hearing and subsequently finds that the settlement proposal is fair, reasonable, and adequate." *Id.* (citing Fed. R. Civ. P. 23(e)(2)).

> In determining whether a settlement is fair, reasonable, and adequate, the court must consider whether:
>
> (A)   the class representatives and class counsel have adequately represented the class;
>
> (B)   the proposal was negotiated at arm's length;
>
> (C)   the relief provided for the class is adequate, taking

11

into account:

> (i)    the costs, risks, and delay of trial and appeal;
>
> (ii)   the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>
> (iii)  the terms of any proposed award of attorney's fees, including timing of payment; and
>
> (iv)  any agreement required to be identified under Rule 23(e) (3); and
>
> (D)   the proposal treats class members equitably relative to each other.

*Id.* (citing Fed. R. Civ. P. 23(e)(2)).

"Nevertheless, '[t]he primary concern addressed by Rule 23(e) is the protection of class members whose rights may not have been given adequate consideration during the settlement negotiations.'" *Id.* (quoting *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158 (4th Cir. 1991)). "In the Fourth Circuit, the Rule 23(e) (2) analysis has been condensed into the two-step *Jiffy Lube* test which examines the fairness and adequacy of the settlement." *Id.* (citing *In re The Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 254 (E.D. Va. 2009)); *see, e.g.*, *In re Zetia (Ezetimibe) Antitrust Litig.*, No. 2:18MD2836, 2023 WL 6871635, at *3-6 (E.D. Va. Oct. 18, 2023) (Smith, J.) (applying the *Jiffy Lube* test in granting final approval).

## 1.    Fairness

"Under the fairness prong of the Jiffy Lube test, the court must assess the procedural fairness of the settlement negotiations." *Galloway*, 2020 WL 7482191, at *3 (citing *In re The Mills Corp. Sec. Litig.*, 265 F.R.D. at 254. "The relevant factors to evaluate the fairness of the settlement negotiations are '(1) the posture of the case at the time settlement was proposed; (2) the extent of

discovery that had been conducted; (3) the circumstances surrounding the negotiations; and (4) the experience of counsel.'" *Id.* (quoting *Brown v. Transurban USA, Inc.*, 318 F.R.D. 560, 571 (E.D. Va. 2016)).

### a. The posture of the case at the time settlement was proposed.

Prior to settling this case, the parties litigated a motion to dismiss Plaintiffs' claims, which the Court denied. (ECF No. 52). By the time the parties mediated, Class Counsel, who are experienced in prosecuting data breach class actions, had a clear view of the strengths and weaknesses of their case and were in a strong position to make an informed decision regarding the reasonableness of a potential settlement. **Exhibit 2**, Declaration of Co-Class Counsel Ryan D. Maxey ("Maxey Decl.") ¶ 2. This supports the fairness of the settlement. *See, e.g.*, *In re Novant Health, Inc.*, No. 1:22-CV-697, 2024 WL 3028443, at *6 (M.D.N.C. June 17, 2024) (deeming this factor satisfied where the parties negotiated a settlement while the court was evaluating a second motion to dismiss); *Pierce v. Statebridge Co., LLC*, No. 1:20CV117, 2021 WL 1711784, at *2 (M.D.N.C. Apr. 29, 2021) (deeming this factor satisfied where "Plaintiff's Counsel and Defendant's Counsel are both experienced in complex litigation, including class action litigation" and "had 'a clear view of the strengths and weaknesses' of their case and were in a strong position to make an informed decision regarding the reasonableness of a potential settlement") (citation omitted); *Hinkle v. Matthews*, No. 2:15-CV-13856, 2018 WL 6004680, at *2 (S.D.W. Va. Nov. 15, 2018) (deeming this factor satisfied where "Plaintiff's Counsel and Defendant's Counsel, who are both experienced in prosecuting complex class action claims such as these, had 'a clear view of the strengths and weaknesses' of their case and were in a strong position to make an informed decision regarding the reasonableness of a potential settlement.") (citation omitted).

### b. The extent of discovery that had been conducted.

Prior to filing and during this action, Class Counsel investigated information available online related to the Incident, including reviewing reports that Defendant filed with various authorities related to the Incident. Maxey Decl. ¶ 3. Prior to mediation, Plaintiffs requested and obtained from Defendant information about (i) the number of persons impacted by the Incident; (ii) the types of information impacted by the Incident; (iii) how Defendant acquired the information; (iv) whether the information was encrypted; (v) how and when the Incident occurred, including the technical details and the identity of the perpetrator; (vi) whether forensic reports were prepared; (vii) Defendant's efforts to address the Incident, including any remediation of Defendant's systems; and (viii) Defendant's efforts to monitor for or prevent misuse of the information. *Id.* ¶ 4. This supports the fairness of the settlement. *See, e.g.*, *In re Novant Health, Inc.*, 2024 WL 3028443, at *6 (deeming this factor satisfied where the case settled before formal discovery but the defendant disclosed information about data sharing to impacted individuals and authorities, class counsel gathered publicly available information, the defendant provided contact information for class members to the settlement administrator, and the parties engaged in limited, informal discovery for settlement purposes).

### c. The circumstances surrounding the negotiations.

The parties mediated this case before United States Magistrate Judge John F. Anderson. Maxey Decl. ¶ 5. After the September 25, 2023 mediation, the parties negotiated a term sheet outlining the settlement terms. *Id.* In October 2023, Plaintiffs sent Defendant a draft 18-page formal settlement agreement. *Id.* Over the following months, the parties negotiated the final details of the S.A. *Id.* The S.A. was fully executed on January 26, 2024. *Id.* This supports the fairness of the settlement. *See, e.g.*, *In re Novant Health, Inc.*, 2024 WL 3028443, at *6 (deeming this factor

satisfied where "[m]ediation was conducted by an independent mediator and was a collaborative process").

### d. The experience of counsel.

As explained in the Maxey MPA Declaration (filed with the preliminary approval motion), "Class Counsel have led some of the country's most complex civil litigation; have been recognized by courts and national publications for our knowledge and experience in privacy and data breach cases; and are responsible for groundbreaking data breach settlements, including in settlements approved in this judicial district." Maxey MPA Decl. ¶ 2; *see generally id.* ¶¶ 3-12. This supports the fairness of the settlement.

### 2. Adequacy

"Under the adequacy prong of the *Jiffy Lube* test, the court assesses the substantive adequacy of the settlement agreement." *Galloway*, 2020 WL 7482191, at *4 (citing *Brown*, 318 F.R.D. at 571). "The relevant factors to evaluate the adequacy of the settlement are '(1) the relative strength of the plaintiffs' case on the merits, (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial, (3) the anticipated duration and expense of additional litigation, (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment, and (5) the degree of opposition to the settlement.'" *Id.* (quoting *Brown*, 318 F.R.D. at 573).

### a. The relative strength of the plaintiffs' case on the merits.

Because the law surrounding data breaches is still developing, it is challenging to evaluate the likelihood of Plaintiffs prevailing at trial. Moreover, Plaintiffs' claims have not been tested through litigation discovery and dispositive motions. This supports the adequacy of the settlement. *See, e.g.*, *In re Novant Health, Inc.*, 2024 WL 3028443, at *6 ("The law surrounding data privacy

and the surreptitious sharing of user data is still developing, making it challenging for the parties to evaluate the likelihood of prevailing at trial."); *Robinson v. Carolina First Bank NA,* No. 7:18-CV-02927-JDA, 2019 WL 719031, at *10 (D.S.C. Feb. 14, 2019) (deeming this factor satisfied where "Defendant has not had the opportunity to test Plaintiff's legal claims through litigation discovery and dispositive motions").

### b. The existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial.

Here, there is no dispute that the Incident occurred. Regarding difficulties of proof as to other issues in this action, such as whether or not the Incident resulted from Defendant's negligence and whether or not Plaintiffs' alleged damages are cognizable under applicable law, it is simply unknown how future litigation may have impacted the quality of the Settlement. *See Robinson,* 2019 WL 719031, at *10 (analyzing this factor and reasoning that "while Plaintiff is confident in the strength of her case, it is unclear to what extent litigation may present issues that underscore the desirability of this settlement").

### c. The anticipated duration and expense of additional litigation.

Had this action not settled, the parties would likely have litigated a motion to dismiss. If the motion to dismiss were not granted, the parties would have engaged in discovery, including expert discovery, followed by motions for class certification and summary judgment. If a class were certified and summary judgment denied, the action would have proceeded to and through trial. Given the rapidly evolving law in data breach cases, and that no data breach cases have been tried to date (to the knowledge of Class Counsel), it is reasonably possible that an appeal would have followed. Simply put, to continue this action to its end would have taken years and required substantial expense. This supports the adequacy of the settlement. *See, e.g.*, *In re Novant Health,*

*Inc.*, 2024 WL 3028443, at *6 (deeming this factor satisfied where "lengthy discovery, including the deposing of expert witnesses on damages, motions for summary judgment, and a motion for class certification would occur before final resolution could take place"); *Feinberg*, 610 F. Supp. 3d at 768 (deeming this factor satisfied where "the risk of appeal—and its attendant costs—was particularly acute in a case, such as this one, that presents a novel question"); *Robinson*, 2019 WL 719031, at *10 (deeming this factor satisfied where "a case such as this, a fully contested class action lawsuit would be expected to take significant time to resolve at the District Court level and additional time would result from any appeals. Likewise, the expenses for such a complex case, to include the completion of merits and expert discovery, class certification briefing, dispositive motions, trial, post-trial motions, and possible appeals would entail substantial expenses for all parties").

### d. The solvency of the defendants and the likelihood of recovery on a litigated judgment.

Plaintiffs have no reason to believe that Defendant's solvency would have impacted the likelihood of recovery on a litigated judgment. "However, given the other factors weighing in favor of the adequacy of the Settlement Agreement, this factor alone 'should not preclude final approval of the proposed Settlement.'" *In re Zetia (Ezetimibe) Antitrust Litig.*, 2023 WL 6871635, at *5; *see, e.g., In re Novant Health, Inc.*, 2024 WL 3028443, at *6 (deeming this factor satisfied where the defendant was "a large entity with substantial assets, it was insured for any losses incurred in this case, and there are no issues about [its]solvency that affected settlement"); *Galloway*, 2020 WL 7482191, at *9 (deeming this factor to have "no bearing" where class counsel did not provide argument but the court had "no reason to believe" there was a risk of insolvency).

**e.      The degree of opposition to the settlement.**

Of the 45,499 Settlement Class Members, only five (5) sought exclusion and none objected. Azari Decl. ¶ 20. This reflects a low degree of opposition to the settlement, supporting the adequacy of the settlement. *See, e.g., In re Novant Health, Inc.*, 2024 WL 3028443, at *6 (deeming this factor satisfied where thirty-seven (37) of over 1.3 million class members sought exclusion and none objected); *In re Zetia (Ezetimibe) Antitrust Litig.*, 2023 WL 6871635, at *2 n.3, 5 (deeming this factor satisfied where sixteen (16) class members timely sought exclusion and none objected); *Haney*, 2023 WL 2596845, at *3 (deeming this factor satisfied where 190 of 350,000 class members sought exclusion and thirty-one (31) initially objected).

## V.      CONCLUSION

Considering the factors bearing on the fairness and adequacy of the settlement, the Court should approve the notice to class members and find that the settlement meets the standard for final approval under Rule 23(e). Plaintiffs respectfully request the Court enter the order proposed by the Parties granting final approval and certifying the Settlement Class; grant Plaintiffs' Motion for an Award of Attorneys' Fees, Reimbursement of Expenses, and Service Award to Plaintiffs; and enter a final judgment dismissing this case.


Date: August 2, 2024                    Respectfully submitted,

                                                      */s/ Steven T. Webster*
                                                      **WEBSTER BOOK LLP**

                                                      Steven T. Webster (V.S.B. No. 31975)
                                                      300 N. Washington St., Suite 404
                                                      Alexandria, Virginia 22314
                                                      (888) 987-9991

                                                      **COLE & VAN NOTE**

                                                      Laura Van Note, Esq. (CA S.B. #310160)

555 12th Street, Suite 2100
Oakland, CA 94607
(510) 891-9800

**MORGAN & MORGAN COMPLEX
BUSINESS DIVISION**

Patrick A. Barthle
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
(813) 223-5505
pbarthle@ForThePeople.com

**MAXEY LAW FIRM, P.A.**

Ryan D. Maxey
107 N. 11th St. #402
Tampa, Florida 33602
(813) 448-1125
ryan@maxeyfirm.com

*Attorneys for Plaintiffs and the Proposed Class*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 2, 2024, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notice of electronic filing to all counsel of record.

/s/ Steven T. Webster
Steven T. Webster (VSB No. 31975)
WEBSTER BOOK LLP

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on August 2, 2024, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notice of electronic filing to all counsel of record.

<u>/s/ *Steven T. Webster*</u>
Steven T. Webster (VSB No. 31975)
WEBSTER BOOK LLP